CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED for Charlottesville
OCT 06 2005
JOHN F. CORCORAN, CLERK
BY: Fay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CARRIE H. DAVIS,<br><br>                           *Plaintiff,*<br><br>v.<br><br>JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY,<br><br>                         *Defendant.* | CIVIL ACTION NO. 3:04-CV-00075<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

      On September 13, 2004, Plaintiff brought this action under 42 U.S.C. § 405(g) for review of the Commissioner's denial of her claim for Disability Insurance Benefits under Title II of the Social Security Act. By standing order of the Court, this case was referred to the Honorable B. Waugh Crigler, United States Magistrate Judge, for proposed findings of fact and a recommended disposition. Plaintiff and Defendant filed motions for summary judgment motion on May 17, 2005, and July 18, 2005, respectively. The Magistrate filed his Report and Recommendation ("Report") on July 25, 2005, recommending that this Court enter an Order remanding the case to the Commission for further proceedings.

      On August 11, 2005, Defendant filed Objections to the Report, which obligated this court to make a *de novo* determination with respect to those portions of the report to which objections were made. 28 U.S.C.A. § 636(b)(1). After a thorough examination of Defendant's objections and Plaintiff's response thereto, the supporting memoranda, the applicable law, and the documented record, this Court declines to follow the Report of the Magistrate Judge for the

reasons stated below, and will grant Defendant's motion for summary judgment.

## I. BACKGROUND

On July 31, 2002, the Plaintiff, Carrie H. Davis, filed an application for Disability Insurance Benefits under Title II of the Social Security Act ("Act"). [R. 63]. After the claim was denied initially and on reconsideration, Ms. Davis requested a hearing which was held on August 12, 2003, before Administrative Law Judge Brian P. Kilbane. At the hearing, she requested a closed period of disability beginning September 21, 2001, and ending on February 3, 2003, the date she returned to work. [R. 280]. The crux of her complaint is that during this period, which followed a surgery to remove a bone spur from her right foot, severe pain and the attendant need to remove pressure from her foot prevented her from engaging in substantial gainful employment. [P. Mot. S. J. 2-6; R. 292-94].

In his October 30, 2003 decision, Judge Kilbane analyzed Ms. Davis' claim using the five-step sequential analysis required by 20 C.F.R. §404.1520. He denied benefits at step four, finding that she "has the residual functional capacity to perform sedentary activity" and that her "past relevant work as a postal clerk did not require the performance of work-related activities precluded by her residual functional capacity." [R. 27]. He also found "the claimant's allegations regarding her limitations are not totally credible." *Id.* In the body of his opinion, Judge Kilbane gave at least five distinct reasons why claimant's reports of disabling pain inconsistent with sedentary work were not credible, among them the lack of medical records substantiating her claim that her treating physician had advised her to elevate her legs for two to three hours per day. [R. 25]. He had also determined that "[n]o medical test, including x-ray, MRI, or EMG, has revealed any impairment that would cause the claimant's alleged symptoms" of disabling pain, [R. 25], and that "[n]o treating or examining physician has reported any signs

or laboratory findings that establishes the presence of any disorder that prevents the claimant from performing all substantial gainful activity." [R. 26].

Ms. Davis timely filed a request with the Social Security Administration's Appeals Council to review the ALJ's decision. While her request was before the Council, she submitted one new piece of evidence: a letter dated April 10, 2004, from her treating orthopedic physician, Dr. Hurwitz. The letter stated (in full):

> I am Ms. Davis's treating orthopedic physician. During the period from September 21, 2001 to February 3, 2003, her foot condition caused substantial pain upon prolonged standing/walking and upon prolonged sitting with her foot on the floor. During this period, in order to help control the pain, she was required to elevate her foot frequently throughout the day.

[R. 276].

In a summary action dated August 28, 2004, the Appeals Council stated that neither the new evidence nor the record as a whole provided a basis for granting Ms. Davis' request for review. [R. 6]. The effect of the Appeals Council's action was to render Judge Kilbane's decision the final decision of the Commissioner. 20 C.F.R. § 404.981. This appeal followed.

## II. STANDARD OF REVIEW

This Court must uphold the Commissioner's factual findings if they are supported by substantial evidence and were reached through application of the correct legal standard. 42 U.S.C.A. §§ 405(g), 1383(c)(3); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The Fourth Circuit has elaborated on this definition, explaining that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640,

642 (4th Cir. 1990).

A. Effect of Additional Evidence Presented to Appeals Council After the ALJ's Decision

When a claimant requests review by the Appeals Council, the Council must make a procedural decision whether to decline or grant review. Regulations govern when the Council is required to grant review and specify the effect of newly submitted evidence on this procedural decision:

> (a) The Appeals Council will review a case if--
> (1) There appears to be an abuse of discretion by the administrative law judge;
> (2) There is an error of law;
> (3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or
> (4) There is a broad policy or procedural issue that may affect the general public interest.
>
> (b) If **new and material evidence** is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970 (emphasis added).

Evidence is "new" if it is not duplicative or cumulative, and is material "if there is a reasonable possibility that the new evidence would have changed the outcome." *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

The Appeals Council need not consider additional evidence unless it is (1) new (2) material, and (3) relates to the relevant time frame. 20 C.F.R. §404.970(b); *Wilkins*, 95 F.2d at 95-96. If these three conditions are met, the Council must consider an enhanced record that includes the new evidence, and must grant review if the ALJ's original findings are contrary to the weight of the evidence in the enhanced record. Even if newly submitted evidence does not

satisfy these three criteria, the Council will grant review if one of the four § 404.970(a) conditions apply.

The Appeals Council is not obliged to supply reasons for refusing to grant review under § 404.970, even if a claimant has submitted new evidence. *Freeman v. Halter*, 15 Fed. Appx. 87, 89, 2001 WL 847978 (4th Cir. 2001)(unpublished opinion)("The regulation addressing additional evidence does not direct that the Appeals Council announce detailed reasons for finding additional evidence insufficient to change the ALJ's decision"); *Hollar v. Commissioner*, 1999 WL 753999, *1 (4th Cir. 1999)(unpublished opinion); *Riley v. Apfel*, 88 F. Supp. 2d 572, 580 (W.D. Va. 2000); *Ridings v. Apfel*, 76 F. Supp. 2d 707, 709 n.6 (W.D. Va. 1999).

If the Council denies review, the ALJ's decision automatically becomes the final decision of the Commission. 20 C.F.R. § 404.981. "It is thus the decision of the ALJ, and not the procedural decision of the Appeals Council to deny review, that is subject to judicial scrutiny." *Bryant v. Barnhart*, 2005 WL 1804423, *3 (W.D. Va. Jan. 21, 2005). Indeed, the Fourth Circuit has held that when the Appeals Council considers additional evidence but denies review, reviewing courts must consider the record as a whole, including the new evidence, to determine whether the decision of the ALJ is supported by substantial evidence. *Wilkins*, 953 F.2d at 96. However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

In its role as a reviewing court, a district court thus must reconcile its duty under *Wilkins* to review the entire record including new evidence with its obligation under *Smith* to abstain from making credibility determinations and resolving factual conflicts. It can do so by determining whether additional evidence is "contradictory," presents "material competing testimony," or "calls into doubt any decision grounded in the prior medical reports." *Bryant* at *5 (citing *Riley*,

88 F. Supp. 2d at 580; *Smallwood v. Barnhart*, No. 7:03cv00749, slip op. at 2 (W.D. Va. Oct. 19, 2004); *Ridings*, 76 F. Supp. 2d at 710). If new evidence presents such conflicts, the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. *Bryant* at *5; *see Thomas v. Commissioner*, 24 Fed. Appx. 158, 162, 2001 WL 1602103 (4th Cir. 2001)(unpublished opinion). If not, then the case can be decided on the existing record without a remand. *Bryant* at *5.

### III. ANALYSIS

Reviewing the record as a whole, including the new evidence, it is clear that the decision of the ALJ is supported by substantial evidence and that a remand is unnecessary.

Plaintiff's disability claim is based on allegations that her foot pain was so severe as to ruin her concentration, prevent weight bearing activity, require her to elevate her legs throughout the day, and, thus, to prevent any gainful employment. [R. 290-92]. Her claim is therefore governed by the Secretary's regulations at 20 C.F.R. § 404.1529, which specify how the Commissioner evaluates symptoms, including pain. [R. 24]. The Fourth Circuit has discussed these regulations at great length:

> Under these regulations, the determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of medical impairment(s) which results from anatomical, physiological, or psychological abnormalities *which could reasonably be expected to produce the pain or other symptoms alleged.* 20 C.F.R. §§ 416.929(b) & 404.1529(b)....At this stage of the inquiry, the pain claimed is not directly at issue; the focus is instead on establishing a determinable underlying impairment--a statutory requirement for entitlement to benefits, *see* 42 U.S.C § 1382c(a)(3)(A)....It is only *after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996)(emphasis in original).

The ALJ cited evidence in the record which showed that after her foot healed following her 2001 and 2002 surgeries, none of Plaintiff's treating or examining physicians could find objective evidence of an "underlying impairment" reasonably likely to produce the pain alleged. He found, "No medical test, including x-ray, MRI, or EMG, has revealed any impairment that would cause the claimant's alleged symptoms....No treating or examining physician has reported any signs or laboratory findings that establishes the presence of any disorder that prevents the claimant from performing all substantial gainful activity." [R. 25-26]. In short, the ALJ concluded that Plaintiff did meet the step-one burden imposed by § 404.1529.[1]

Physicians usually do not write medical reports with an eye toward legal standards—like whether a physical abnormality is reasonably likely to produce the quantum of pain alleged—but substantial evidence, both direct and inferential, support the ALJ's findings.

Because of her persistent complaints of pain, physicians ordered MRI testing in December 2001 to determine why Plaintiff was not recovering normally from her September 2001 surgery. Her podiatrist read the MRI to show a one-centimeter muscle tear in the "intrinsic musculature in the lateral aspect" of her right foot and "[o]ther findings...either asymptomatic or consistent with postop result." [R. 139-141]. On March 19, 2002, the same physician who noted these MRI results conducted a physical exam and noted "[p]ersistant [sic] pain 'out of proportion' is present along plantarlateral and medial aspect of R heel area." [R. 134]. He also found "[n]o increased

---

[1]Although the ALJ did not observe the two-step framework required by 20 C.F.R. §404.1529, in that he needlessly discussed the intensity and disruption caused by Plaintiff's alleged pain, this error is harmless and need not distract this Court from conducting an appropriate review.

7

temperature or atrophic changes consistant [sic] with CRPS/RSD [Reflex Sympathetic Dystrophy Syndrome]" and ordered an EMG to rule out a nerve entrapment. *Id.* Electrodiagnostic testing on April 5, 2002, ruled out nerve entrapment. [R. 114-15].

In February 2002, Dr. Hurwitz, who is Plaintiff's treating orthopedic surgeon and was also aware of the tear revealed by the MRI, concluded that she had "primarily a pain problem." [R. 195]. He opined that she should immediately start bearing more weight and wearing regular shoes under the supervision of a therapist. [R. 195-96]. In April 2002, after reviewing Plaintiff's negative results for nerve entrapment and "X-rays [that] do not show stress fracture or stress changes in the calcaneus," he again concluded that Plaintiff had an unspecified "pain condition" and recommended exercises. [R. 192]. On October 21, 2002, Dr. Hurwitz ordered another MRI that showed:

> "(1) Apparent superficial lipoma along the medial plantar aspect of the ankle and regional papable abnormality; (2) Thickening at the origin of the plantar fascia, likely representing post-operative change. No associated soft tissue or calcaneal edema to suggest active plantar fasciitis; (3) Amorphous signal with slight edema in the region of the deep fibers of the deltoid ligament. This could lead to posteromedial impingement symptoms and clinical correlation is advised."

[R. 188-89]. Dr. Hurwitz ordered a second surgery, which was performed on November 19, 2002, through which he ruled out the suspected lipoma and gave a post-operative diagnosis of fibrosis and scar tissue in the planta fascia and muscle fascia. [R. 218] At follow-up visits after Plaintiff's second, November 2002 surgery, Dr. Hurwitz noted that her surgery wound looked well-healed. [R. 273-74]. After a February 24, 2003 office visit, Dr. Hurwitz reported that there had been "no change in the overall level of pain" in Plaintiff's right foot, and that he did not find anything during the second surgery that indicated damage caused during the first surgery. [R. 256]. Plaintiff had resumed working as a post office distribution clerk four hours per day on

8

February 3, 2003, and testified on August 12, 2003, that she was on her feet at work "constantly." [R. 283].

On April 23, 2002, a physician from the University of Virginia's Pain Management Center had found that Plaintiff's pain was of "unknown etiology." [R. 119].

Plaintiff was examined consultatively on October 17, 2002, by Narinder Arora, M.D. Dr. Arora reported that her heel looked normal; that "[m]ovement of the heel, dorsiflexion, plantarflexion, inversion, everything is normal"; and concluded, "Her history does not fit with the examination and I do not believe there is any reason and do not see any reason as well for the problems in her right heel." [R. 183].

Substantial evidence exists to support the ALJ's finding that Plaintiff has failed to prove an underlying condition reasonably likely to produce the pain she alleged. The December 2001 MRI did show a tear in Plaintiff's foot that could "take several months to resolve" [R. 138], but this does not amount to proof that of a condition reasonably likely to produce the pain Plaintiff reported. Instead, Dr. Hurwitz identified not the tear but rather an unspecified "pain problem" or "pain condition" as the cause of her discomfort. This assessment, and his February 2002 recommendation that she start bearing weight and wearing regular shoes under supervision, indicate that Dr. Hurwitz did not think the tear was likely to produce pain inconsistent with weight-bearing. A physician from UVA's Pain Management Center found Plaintiff's pain to be of "unknown origin." Her podiatrist described her pain as "out of proportion." Although Plaintiff points out that the cryptic "out of proportion" statement could refer to her own words during the examination, (P. Mot. S. J. at 16), Plaintiff bears the burden of proof and has presented no evidence to refute the ALJ's reasonable inference that this reflected the physician's own

9

assessment. Plaintiff's physicians continued throughout spring 2002 to try to pinpoint the source of her pain—ordering an EMG test and a series of X-rays to rule out nerve entrapment and CRPS/RSD—and presumably would not have gone to these lengths if they thought the tear was its likely source. These tests were negative for any abnormalities. A consulting physician found absolutely nothing wrong with Plaintiff's foot in October 2002. Although a second MRI indicated some problems that led to a second surgery, Plaintiff's treating orthopedist reported that she had no real reduction in her pain level after the surgery *at a time when she had been back to work four hours per day* at her previous position. In short, substantial evidence supports the ALJ's conclusion that Plaintiff failed to carry her burden of showing an underlying medical condition that could explain her pain.

The April 10, 2004 letter is not material to this "step one" inquiry required by 20 C.F.R. § 404.1529.[2] The letter merely states that Plaintiff reported "substantial pain," and that "she was required" to elevate her feet to control her pain. [R. 276]. Plaintiff's hearing testimony clarifies that Dr. Hurwitz told her to elevate her leg above her heart to alleviate throbbing. [R. 291]. This is classic "step two" evidence under § 404.1529, in that it bears on the intensity and persistence of

---

[2] In her response to Defendant's Objections to the Magistrate's Report, Plaintiff asserts that the Report includes a finding that the April 10, 2004 letter submitted to the Appeals Council constituted new and material evidence, [P. Resp. Obj. at 4], and that Defendant failed to object and thus waived any objection to this finding. However, nowhere in the Report does Judge Crigler make such a finding. Instead, Judge Crigler asserted that the Appeals Council "has a duty to make specific findings regarding the weight it has given new evidence" and offered his view that the new medical evidence "add an important factor to consider in determining the weight to be given the evidence in this case." [Report, 3-4] Further, for the reasons herein explained, this court disagrees that the letter in question constitutes material evidence. Plaintiff's waiver argument has no basis.

10

her pain, and its effect on her ability to work.[3] *Craig*, 76 F.3d at 596. It is not evidence of any "anatomical, physiological, or psychological abnormality" likely to cause her pain; therefore, it does not and can not conflict with such evidence as the ALJ did consider concerning her underlying impairment, and provides no basis for a remand.

## IV. CONCLUSION

The ALJ's finding that Plaintiff failed to prove an anatomical, physiological, or psychological abnormality that could reasonably be expected to produce the pain she alleged is supported by substantial evidence. The additional evidence Plaintiff submitted is not material to this finding, and thus under 20 C.F.R. § 404.1529 and 20 C.F.R. § 404.970(b), should be disregarded by a reviewing court. The Defendant's Motion for Summary Judgment is GRANTED, and the Commissioner's decision is AFFIRMED.

An appropriate Order shall issue.

The Clerk of the Court is directed to send certified copies of this Memorandum Opinion to all Counsel of Record.

ENTERED: /s/ *[signature]*

U.S. District Judge

10-6-05

Date

---

[3] The Court does not dispute that the April 10, 2004 letter is "new" evidence—in that it is not duplicate or cumulative—and that it contradicts one of the bases of the ALJ's credibility determination. [R. 25]. Instead, the Court finds that the letter is not "material" because it has no bearing on the threshold question of whether Plaintiff has shown an underlying impairment likely to cause her pain. As noted *supra* n.1, the ALJ could have and should have refrained from making any credibility determinations once he found that Plaintiff had failed to make this threshold showing. *Craig*, 76 F.3d at 595.

11